IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED JAN 2 6 2010 CLERK, U.S. DISTRICT COURT ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.# 01:09cv1107 |
| ) | |
| ) | |
| KEVIN VON LAMONT BURTON, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff's Motion for Summary Judgment. In Plaintiff's Complaint, it alleges that Defendant has filed invalid liens encumbering the property of its officials. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1345 because this is a civil action commenced by the United States.

On April 9, 2009, Defendant Burton filed a Form UCC-1 Financing Statement ("Financing Statement") with FloridaUCC, Inc., which recorded the filing in the Registry. The Financing Statement was assigned the number 200900330838and names Defendant Burton as the "secured party" on collateral possessed by the following so-called "debtors": James E. Charles, Jr.; Paul J. McNulty; Jonathan Andrews; M.R. Bailey; Harry Lidski; Joseph Dombroski; Mark Dunn; Judge Henry E. Hudson; and Fernando

Galindo. Identified in the attached "Security Agreement" as "all doing business for the Eastern District of Virginia (Richmond Division), at the United States District Court, 1000 East Main Street, Suite 305, Richmond, Virginia," the "debtors" are named in their official and individual capacities.

The Financing Statement purports to give Defendant Burton a security interest in "[a]ll of Debtor's assets, land, and personal property, and all of Debtor's interest in said assets, land, and personal property, now owned and hereafter acquired, now existing and hereafter arising, and wherever located, described fully in the Private Security Agreement No. KVB-26785-633284184 dated December 18, 2006, within the 'Notice - Request for Settlement,'" to satisfy a debt in the amount of $14,484,855,000.00.

Attached to the Financing Statement and incorporated by reference therein are numerous documents that purport to establish how the "debtors" are bound to Defendant Burton. The documents focus on Burton's attempts to settle fictitious civil and criminal "assessments" against the "debtors" arising out of his criminal prosecution, and the "debtors" supposed failure to respond to those attempts. In particular, he attaches two documents entitled "Notice - Request for Settlement," in which he states that he has a so-called "Judgment in Estoppel" against the "debtors," which he calls a "Notice of Dishonor - Formal

Certificate of Protest and Affidavit of Non-Response," a "Notice of Protest," and/or a "Certificate of Protest." The referenced Notices and Certificates purport to establish that the "debtors" are now in "default" to Defendant Burton because they "dishonored" - that is, failed to respond to - documents he previously sent them demanding they settle his case by agreeing to expunge the records of this Court and federal agencies, release him from confinement, and vacate the offices of federal judge and clerk of court.

Neither the Financing Statement nor any of the other documents bear the signature of any of the "debtors" or otherwise manifest that they affirmatively authorized its filing.

The Financing Statement that Defendant Burton filed in Florida on April 9, 2009, is not the first such filing he has made. Defendant Burton previously filed a Financing Statement against some of the same government officials in the State of Washington. That filing has since been removed.

Defendant Burton also filed a UCC Financing Statement in Gwinnett County, Georgia. While mentioning Paul McNulty and Charles E. James, Jr. in describing the collateral covered by the lien, Defendant Burton listed himself as both the "secured party" and "debtor" in that filing. Accordingly, that financing statement does not create a security interest against the property of any of government officials or the United States.

Defendant Burton has also filed more than 200 pages of lien-related documents in this Court in his criminal case, leading United States Magistrate Judge M. Hannah Lauck to issue an order on February 6, 2007, declaring that the documents would not be docketed, but rather maintained by the Clerk in an expandable red-well folder. Magistrate Judge Lauck further ordered Defendant Burton to show cause why an injunction should not issue limiting the filings that Defendant could make – an order to which Defendant appears not to have responded. Notably, Magistrate Judge Lauck's Order further commented on the frivolity of Burton's lien-related documents:

> [N]either federal nor state law provides that a citizen may file a lien on the property of a public official for alleged wrongs committed by that official against the citizen without the existence of a judgment in the citizen's favor." United States v. Barker, 19 F. Supp. 2d 1380, 1384 (S.D. Ga. 1998). Such a "method of lien filing, i.e., filing liens whenever the individual feels grieved or wronged by a public official, unduly interferes with the government's ability to perform its duties." Id. (holding that the defendants; frivolous liens had no effect and enjoining the defendants from submitting future liens of the same nature).

Undeterred by Magistrate Judge Lauck's Order, Burton has continued to submit a variety of sham documents in his criminal case, including two documents received by the Clerk's Office on May 13, 2009, called a "Commercial Notice of Verified Amended Complaint – Bill in Equity" and a "Verified Amended Complaint – Bill in Equity." These documents recount the history of Burton's sham UCC filings in Florida and elsewhere seeking various forms

of relief. Furthermore, on August 11, 2009, Burton sought to file a document entitled "Cross Plaintiff/Petitioner's Motion for Judgment - Bill in Equity," which attempts to make the case for enforcing his fraudulent liens in this District. Among other relief, Burton's "Motion for Judgment" seeks his release from federal custody, expungement of his records from various federal agencies' files, and payment by the "debtors" of $14,485,000,000.00.

Defendant Burton has submitted a variety of sham documents in this case, some having particular interest to the disposition of this Summary Judgment. First, the document entitled "Commercial Notice of Verified Complaint Bill in Equity by Subsequent, Optional, Exception Special Visitation" recounts the numerous vexatious financial documents that he has sent to the Federal employees involved in his prosecution. This document constitutes a judicial admission by Defendant Burton of the very allegations made by the United States in its Complaint and in this Motion.

Second, in the document entitled "Due Presentment - Settlement" Burton attempts to utilize the same sham scheme he employed in connection with his criminal proceeding to avoid responsibility in this very action. Although largely unintelligible, Defendant seeks to compel the United States, including this Court, to either comply with his unrealistic

demands within ten days or be deemed to have consented to liability in an unspecified amount. As stated in the document "[f]ailure to do so shall be certified as YOUR CONFESSION that any amount entered is correct."

Summary judgment must be granted when the evidence reveals that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To withstand summary judgment, the non-moving party must go beyond mere allegations and controvert the moving party's motion by "set[ting] out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). A dispute over an issue of material fact is "genuine" under Rule 56(c) only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 127 S.Ct. 1769, 1776 (2007).

In the face of prisoners filing liens solely to harass a state or federal official, courts have routinely issued declaratory judgments ordering that the offending documents are declared null, void, and of no legal effect. See e.g., United

States v. Barker, 19 F. Supp. 2d 1380, 1383 (S.D. Ga. 1998); see also United States v. MacElvain, 858 F. Supp. 1096, 1100 (M.D. Ala. 1994) ("This Court condemns such self-help. It is not authorized by law. There is no legal basis for filing these common law liens, complaints, and commercial notes. Every court to consider the validity of these documents have found them to be without basis.").

The Declaratory Judgment Act affords the Court an appropriate vehicle for declaring Burton's Florida filing null, void, and of no legal effect. See 28 U.S.C. § 2201(a)(2010). It provides, in relevant part, that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Id. Under Fourth Circuit law, a federal court may properly issue declaratory relief provided that: (1) the complaint alleges an "actual controversy" between the parties "of sufficient immediacy and reality to warrant issuance of a declaratory judgment;" (2) the court possesses an independent basis for jurisdiction over the parties; and (3) the court does not abuse its discretion in exercising jurisdiction. Volvo Constr. Equip. N. America, Inc. v. CLM Equip. Co., 36 F.3d 581, 592 (4th Cir. 2004). A district court will not abuse its

discretion in issuing a declaratory judgment if doing so "'will serve a useful purpose in clarifying and settling the legal relations in issue,' and 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" Id. (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937)).

All three criteria are easily met in this case. As to the second element, this Court has an independent basis for jurisdiction pursuant to 28 U.S.C. § 1345 because this is a civil action commenced by the United States. It is proper for the United States to bring this action for at least two reasons. First, because the fictitious "Judgment in Estoppel" that purportedly gives rise to the lien supposedly arises out of claims against the "debtors" in their official capacities, it seeks to impose liability on the United States. See Brandon v. Holt, 469 U.S. 464, 471-72 (1985). The United States certainly may defend itself against any attempt to impose liability against it, particularly where, as here, there is no valid waiver of sovereign immunity. Second, "[t]he United States has standing to seek relief from actual or threatened interference with the performance of its proper governmental functions." United States v. Ekblad, 732 F.2d 562, 563 (7th Cir. 1984). Defendant Burton's efforts to harass and intimidate the public officials involved in his criminal prosecution, solely on the basis of their official

acts, clearly threatens to hinder the performance of governmental functions.

As to the first and third elements, it is clear that an actual controversy exists, since Defendant Burton's actions infringe on the sovereign immunity of the United States, malign the creditworthiness of nine government officials, and cloud title to their property. The Financing Statements purport to pledge "[a]ll of Debtor's assets, land, and personal property, and all of Debtor's interest in said assets, land, and personal property, now owned and hereafter acquired, now existing and hereafter arising, and wherever located" as collateral to satisfy a debt to him of more than $14 billion. The Security Agreement goes on to state that "all property" of the "debtors" is "hereby the property and security of the Secured Party, i.e. Kevin Von Lamont Burton, . . . and before any of the . . . property can be exchanged, sold, tendered or in any manner disposed of, must be compensated to the secured party." The representation that all property belonging to a judge or a law enforcement agent has been pledged as collateral in a secured transaction represents a substantial controversy of sufficient immediacy and reality because it prevents those alleged "debtors" from selling their property without first addressing the indebtedness secured by the property. The resolution of this actual controversy through the issuance of a declaratory judgment will serve the important

purposes of clarifying the legality of Defendant Burton's filing and freeing the "debtors" from the "uncertainty, insecurity, and controversy" created by the fraudulent lien. Volvo Constr. Equip. N. Amer., Inc., 36 F.3d at 592 (quoting Aetna Cas. & Sur. Co., 92 F.2d at 325).

The Financing Statement that Burton filed with FloridaUCC, Inc., is, on its face, an unauthorized and, thus, invalid filing. Under Florida law, before a person may file a financing statement, the debtor must "authorize[] the filing." Fla. Stat. § 679.509(1)(a); see also id. Comment 3. A debtor authorizes a filing "[b]y authenticating or becoming bound as a debtor by a security agreement." Id. § 679.1021(1)(g); see id. § 679.509(2) (defining "authenticate" as "to sign" or "to execute or otherwise adopt a symbol . . . with the present intent of the authenticating person to identify the person and adopt or accept a record").

It is clear from the face of Burton's documents that the so-called "debtors" never signed or otherwise executed the Security Agreement or Security Agreement Addendum that would underpin the Financing Statement. Instead, any argument Defendant Burton might make that the "debtors" authorized the Financing Statement would necessarily rest on the notion that they became bound to him by virtue of the so-called "Judgment in Estoppel" he claims to have against them. Neither state nor federal law provides

that a citizen may file a lien on the property of a public official for alleged wrongs committed by that official against a citizen without the existence of an actual judgment in the citizen's favor.

Attached to the Financing Statement and Security Agreement, and referenced therein, are numerous, largely nonsensical documents that purport to show that Defendant has what he calls a "Judgment in Estoppel" against the debtors, arising out of his attempts to "settle" civil and criminal "assessments" against them. In particular, Defendant refers to and attaches two documents entitled "Notice - Request for Settlement," in which he states that the "Judgment in Estoppel" he has against the "debtors" is called a "Notice of Dishonor - Formal Certificate of Protest and Affidavit of Non-Response," a "Notice of Protest," and/or a "Certificate of Protest." The referenced Notices and Certificates purport to establish that the "Judgment in Estoppel" exists because the "debtors" "dishonored" - that is, failed to respond to - Burton's attempts to settle the "claims" he has against them arising out of his criminal prosecution and conviction.

There are at least three reasons why, besides the obvious lack of judicial involvement in the so-called "Judgment in Estoppel," that the "judgment" could not give rise to a valid lien as a matter of law.

First, to the extent the "Judgment in Estoppel" rests on actions taken by the "debtors" in their official capacities, the Financing Statement impermissibly imposes liability on the United States without a valid waiver of sovereign immunity. Defendant Burton's apparent desire to impose a lien against the personal property, assets, and real property of the "debtors" is not limited to their individual capacities; his UCC filing also purports to encumber property of the United States by attempting to secure claims against the named individuals in their official capacities. There are numerous indications that the criminal and civil claims he purports to have against them are official capacity claims. See generally Kentucky v. Graham, 473 U.S. 159, 165 (1985) (discussing, in context of a 42 U.S.C. § 1983 suit, characteristics that distinguish personal and official capacity claims). Burton thus refers in the "Security Agreement" to the "debtors" as "all doing business for the Eastern District of Virginia (Richmond Division), at the United States District Court," and the case number for his criminal case is referenced throughout the filed documents. In addition, in his "Notice – Request for Settlement," he seeks relief – such as his release from custody – that could only be accomplished by one who is performing an official duty for the federal government. Most tellingly, in his "Affidavit of Notice of Default," Burton explicitly states that "PAUL J. MCNULTY and

CHARLES E. JAMES, JR., are herein addressed in their private capacity and in their purported public capacity as UNITED STATES ATTORNEY and UNITED STATES ASSISTANT ATTORNEY, participating in a commercial enterprise also known as the United States Municipal Corporation."

In Brandon v. Holt, 469 U.S. 464 (1985), the Supreme Court held that "a judgment against a public servant in his 'official capacity' imposes liability on the entity that he represents." Id. at 471-72; see also Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (internal citation omitted). Consequently, to the extent Burton claims to have a $14 billion "Judgment in Estoppel" against the "debtors" for actions taken in their official capacity, liability for satisfying the monetary judgment would fall on the United States. It is well-settled, however, that the United States may not be held liable absent an express waiver of sovereign immunity. See F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994); United States v. Nordic Village Inc., 503 U.S. 30, 33-34 (1992). Defendant Burton can point to no valid waiver of sovereign immunity that would allow him to obtain a judgment against the United States based on the failure of a federal judge, prosecutors, court personnel, and

law enforcement agents, all acting in their official capacities, to respond to his request to settle claims arising out of his criminal prosecution and conviction. Although the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq., affords a limited waiver of sovereign immunity for certain tort claims seeking money damages against the United States, there is no indication that Defendant Burton ever filed an administrative claim, a prerequisite to seeking relief under the FTCA, 28 U.S.C. § 2675, or that the failure to respond to a request for settlement of FTCA claims can give rise to liability against the United States. Fed. R. Civ. P. 55(d) ("A default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court."). As a matter of law, therefore, Defendant Burton's so-called "Judgment in Estoppel" could not establish a valid lien based on actions taken by the "debtors" in their official capacities.

Nor could the "Judgment in Estoppel" allow Burton to establish a lien against the "debtors" in their personal capacities, if that were his intent. Courts have uniformly held that a prisoner cannot impose a lien against the personal property of public officials based on actions related to the performance of their official duties. See e.g., United States v. McKinley, 53 F.3d 1170, 1172 (10th Cir. 1995) ("[t]o read these

documents is to recognize the fundamental frivolity of the legal tenets espoused therein. We are not familiar with a citizen customer's authority to exact a consensual commercial lien from a public official, but it is a power that has no mooring in either federal or state law."). Many other district courts have similarly concluded that a lien against government officials based on the performance of their public duties is invalid as a matter of law. Indeed, any civil claims a prisoner like Defendant Burton might seek to bring against a federal judge or prosecutors in their personal capacities would be barred by established immunity doctrines. As the Tenth Circuit noted in McKinley, "[f]ederal judges and prosecutors are absolutely immune from damages liability under federal or state law for actions taken in performance of judicial or prosecutorial duties." 53 F.3d at 1172 (citing, inter alia, Stump v. Sparkman, 435 U.S. 349 (1978); Imbler v. Pachtman, 424 U.S. 409 (1976)). Government officials simply are not subject to civil liability because they do not acquiesce in a convicted felon's demand that he be released from confinement, that records of his conviction be expunged, and that public officials vacate their offices. And, equally fundamental, Burton cannot impose criminal "assessments" against any of the "debtors," because a private citizen lacks standing to initiate criminal proceedings. See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973). Thus, the very premise of his "Judgment in Estoppel"

fails as a matter of law even if he only seeks to impose liability against the "debtors" in their personal capacities.

Regardless of whether the lien is being imposed against the "debtors" in their official or individual capacities, the failure to respond to fictitious documents that assert bogus claims could not possibly provide the requisite authorization to be bound by a Security Agreement. A lien is not created by the failure of the officials of the United States to respond to an individual's demand. This Court does not recognize the legality of a lien which is created simply by one party failing to respond to another party's documents. Defendant Burton's documents similarly fail to establish that the nine government officials became bound by a security agreement through silence. For all of these reasons, "[t]he liens themselves fail as a matter of law." McKinley, 53 F.3d at 1172. The Court thus declares that the liens are null, void, and of no legal effect.

Further the Defendant will be enjoined from attempting to file more liens in the future. Federal courts confronted with prisoners who abuse the judicial process and retaliate against those public officials who simply are performing the duties required by their position have granted injunctive relief. 28 U.S.C. § 2202, a second provision of the Declaratory Judgment Act, permits a court to grant "further necessary and appropriate relief based on a declaratory judgment or decree . . . against

any adverse party whose rights have been determined by such judgment." See Ins. Servs. of Beaufort, Inc. v. Aetna Cas. & Sur. Co., 966 F.2d 847, 851-52 (4th Cir. 1992) (discussing scope of authority to issue further relief under § 2202). Both that provision and the All Writs Act, 28 U.S.C. § 1651(a), provide this Court authority to enjoin Defendant Burton from filing future UCC Financing Statements or any other types of lien documents against present or former government officials absent prior court approval.

The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Although the All Writs Act does not independently confer jurisdiction on a federal court, "it does 'authorize a federal court to issue such commands as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.'" In re American Honda Motor Co., 315 F.3d 417, 437 (4th Cir. 2003) (quoting Penn. Bur. of Corr. v. U.S. Marshals Serv., 474 U.S. 34, 40 (1985)). Among other uses, the All Writs Act is commonly understood to grant federal courts authority to limit access to the courts by vexatious litigants. See Cromer v. Kraft Foods North America, Inc., 390 F.3d 812, 817-820 (4th Cir.

2004). Because limiting access to the courts implicates due process considerations, before issuing such an injunction, a court must weigh: (1) the party's history of litigation, especially whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the court and the opposing party from the litigation; and (4) the adequacy of alternative sanctions. <u>Id.</u> at 818. The Court must further ensure that the injunction is narrowly tailored to fit the specific circumstances at issue and afford the litigant notice and an opportunity to be heard. <u>Id.</u> at 818-19.

The injunction requested, prohibiting Defendant Burton from filing any future UCC Financing Statements or other types of liens against the United States or former or present government officials, absent prior court approval, is needed to avoid frustrating any order this Court issues pursuant to the Declaratory Judgment Act. <u>See</u> <u>In re American Honda Motor Co.</u>, 315 F.3d at 437. Absent such relief, Defendant Burton could simply re-file the same documents in Florida and elsewhere, requiring the United States to re-litigate the same case over and over and wasting scarce judicial resources.

Because the United States is not seeking a pre-filing injunction that would limit access to the courts - but, rather,

is only seeking to limit access to UCC and lien registries - the due process considerations implicated in <u>Cromer</u> are not at issue. Nevertheless, Defendant Burton's history of filing lien-related documents both in state UCC registries and with this Court demonstrates his tendency toward vexatious and harassing conduct. As noted above, before filing in Florida, Defendant previously filed or attempted to file UCC Financing Statements against some of the same government officials in Washington and Georgia. Defendant Burton also previously attempted to file hundreds of pages of lien-related documents in this Court. Even after Judge Lauck threatened to enjoin Defendant from continuing to file such documents, he has continued to file documents seeking to enforce the more than $14 billion Florida lien. There can be no doubt that Defendant Burton's vexatious conduct would continue unless the Court issues a permanent injunction. Such baseless and frivolous lien filings clearly have no good faith basis; they are intended only to harass. Moreover, it is extremely burdensome for the United States to have to invalidate Defendant Burton's liens on a case-by-case basis, and for the Court to have to expend resources hearing such cases individually. Finally, as Defendant is already in prison and thus is not susceptible to other means of deterring his conduct such as contempt proceedings, a permanent injunction against the filing of such liens is the most suitable vehicle for preventing such vexatious filings in the

future.

For these reasons, summary judgment should be GRANTED to Plaintiff. An appropriate Order shall issue.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
January 26, 2010